UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PEDRO OTAVO TORO, | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| v. | : | 3:07-CV-1356 (JCH) |
| | : | |
| ARNOLD FOODS COMPANY, INC, | : | |
| d/b/a GEORGE WESTON BAKERIES, | : | |
| INC., | : | AUGUST 28, 2008 |
| Defendant, | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS [Doc. No. 12]**

Plaintiff Pedro Otavo Toro has brought this action against his former employer, defendant Arnold Foods Company, Inc. ("Arnold").  In his Amended Complaint, Toro alleges that Arnold wrongfully terminated him on the basis of his race and national origin.  Toro further alleges that Arnold then made things worse by telling prospective employers inaccurate information about him.  Arnold has filed a Motion to Dismiss three of the counts in Toro's Amended Complaint.  For the reasons that follow, that Motion is **GRANTED**.

**I.    STANDARD OF REVIEW**

In deciding a motion to dismiss, the court takes the allegations of the Complaint as true, and construes them in a manner favorable to the pleader.   Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint.  United States v. City of N.Y., 359 F.3d 83, 87 (2d Cir. 2004).  Dismissal is warranted if the facts as alleged are insufficient to "raise a right to relief above the speculative level."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493

F.3d 87, 98 (2d Cir. 2007).   Bald assertions, and mere conclusions of law, do not

suffice to meet the plaintiff's pleading obligations.  Amron v. Morgan Stanley Inv.

Advisors Inc.,464 F.3d 338, 344 (2d Cir. 2006).

## II.    BACKGROUND

Toro is a Hispanic male of Columbian descent.  For 18 years he worked for

Arnold at its facility in Greenwich.  However, on September 21, 2006, Toro was

terminated from his position.

As recounted by Toro's Amended Complaint, his termination arose out of an

incident on August 26, 2006, in which an African-American employee threatened him

while he was at the workplace.  Toro discussed this incident with his supervisor, and the

supervisor instructed him to go further up the chain by reporting the incident to Arnold's

Human Resources Department.

Toro made the report, and Arnold investigated the incident.  That investigation

revealed that the other employee had used obscene and threatening language, and

had possessed a box cutter during the altercation.  Nonetheless, Arnold decided to

suspend Toro, and ultimately fire him, for his part in the altercation.  The other

employee was not disciplined.  According to Toro, this termination was motivated by his

race, his national origin, and by the fact that he had engaged in previous "open and

vocal opposition to employment discrimination" at Arnold.  Amended Compl. at ¶¶ 6, 12.

Toro claims that since his termination, Arnold has "conducted a campaign to

[tortiously] interfere" with his relationships with potential future employers.  Id. at ¶ 16.

Specifically, Toro alleges that Arnold's managers have made untrue and inflammatory

statements to these potential employers, with the result that these employers have

2

either withdrawn offers of employment to Toro, or have declined to hire him.  Because

of this, Toro has suffered unemployment and financial hardship.  Toro also claims that

Arnold's actions have inflicted emotional distress on him and his family.  Id. at ¶ 19.

Toro's Amended Complaint asserts five counts for relief.  Counts One and Two

appear to allege claims of employment discrimination, and retaliatory discharge, under

both Title VII and the Connecticut Fair Employment Practices Act ("CFEPA").  Id. at

¶¶ 5-13.  Count Three claims that, because of his termination, Toro has been unable to

obtain such benefits as health and welfare benefits, seniority benefits, and retirement

benefits, which he otherwise would have been entitled to as an employee of Arnold.  Id.

¶¶ 14-15.  Count Four asserts a claim for tortious interference with contractual and

business relations, under Connecticut law.  Id. at ¶¶ 16-18.  Count Five asserts a claim

for intentional infliction of emotional distress, again asserted under Connecticut law.  Id.

at ¶¶ 19-20.

Arnold has filed a Motion to Dismiss Counts Three, Four, and Five.

III.  **ANALYSIS**

A.    Count Three

With regard to Count Three, Arnold asserts that it is entitled to dismissal

because Toro has only set forth a claim for damages arising from his wrongful

termination, rather than an independent claim for relief.  Defendant's Mem. at 3.  Toro

does not offer any coherent response to this, choosing instead to reiterate his claim that

the loss of benefits constituted some of his damages from termination.  See Plaintiff's

Mem. in Opp. at 2-3.

The court agrees with the defendant that this claim must be dismissed.  The

issue of whether or not a legal claim exists is analytically distinct from the question of what remedies are available to a plaintiff. <u>Feins v. Am. Stock Exh.</u>, 81 F.3d 1215, 1219 (2d Cir. 1996); <u>Williams v. Walsh</u>, 558 F.2d 667, 670 (2d Cir. 1977). As the court reads the Amended Complaint, Count Three does not purport to set forth an independent claim for relief, but instead merely seeks a particular kind of damages under Counts One and Two. Count Three is dismissed insofar as it purports to be an independent claim for relief.[1]

B.    <u>Count Four</u>

In Count Four, Toro asserts a claim for tortious interference with contractual relations and/or business expectancy. Under this cause of action, a plaintiff must do more than show that the defendant simply interfered with a contractual relationship or business expectancy.[2] Instead, the plaintiff must show that the defendant committed tortious conduct. <u>Daley v. Aetna Life & Cas. Co.</u>, 249 Conn. 766, 805 (1999); <u>Blake v. Levy</u>, 191 Conn. 257, 260 (1983). That means the plaintiff must show that the defendant committed fraud, misrepresentation, intimidation, or molestation, or that the

---

[1] The Amended Complaint does contain a vague reference to ERISA. <u>See</u> Amended Compl. at ¶ 14 ("Due to [Arnold's] wrongful termination of [Toro's] employment, as outlined in [counts one and two] of this Complaint, [Toro] has suffered the loss of the health and welfare benefits, and other benefits and entitlements, including retirement plan benefits and seniority he is guaranteed under ERISA , in effect [sic] for himself and his family during his employment with Arnold."). The court does not understand this to be asserting a claim under ERISA itself. (Indeed, if Toro were asserting such a claim, the court would expect Toro to be more specific as to which of ERISA's remedial provisions he was bringing suit under). Instead, the court understands this to be a claim for consequential damages arising out of employment discrimination.

[2] Arnold suggests that Toro cannot maintain his tortious interference claim because he has not shown that he ever entered into a contract with any other employers. Defendant's Mem. in Support at 5. It may well be that Toro cannot demonstrate a claim for tortious interference with <u>contractual</u> relations. However, the absence of an actual contract does not prevent Toro from bringing a claim based on interference with a prospective business relationship. <u>See</u> <u>Jones v. O'Connell</u>, 189 Conn. 648, 660 (1983).

4

defendant acted maliciously.  <u>Weiss v. Wiederlight</u>, 208 Conn. 525, 536 (1988).  This requirement is sometimes referred to as a requirement that the plaintiff show either improper means or improper motive.  <u>Daley</u>, 249 Conn. at 806.

Toro has failed to allege improper motive.  Instead, his Amended Complaint contains the bare allegation that Arnold "has conducted a campaign to tortuously [sic] interfere with [Toro's] contractual and advantageous relations with potential employers by [making] untrue and inflammatory statements . . . regarding Toro's character and work record."  Amended Compl. at ¶ 16.  The Amended Complaint has no allegation that Arnold acted maliciously, nor does the Amended Complaint plead any facts that indicate that Arnold acted to intentionally interfere with Toro's employment prospects without justification.  <u>See</u> <u>Daley</u>, 249 Conn. at 806 (explaining that in the context of a tortious interference claim, malice means international interference without justification, and further explaining that the plaintiff bears the burden of alleging the lack of justification); <u>cf.</u> <u>Miron v. Univ. of New Haven Police Dept.</u>, 284 Conn. 35, 45 (2007) (explaining that in many circumstances, a former employer is privileged to make defamatory communications to prospective employers).[3]

Toro's Amended Complaint has also failed to demonstrate improper means.  Certainly, the mere uttering of untrue and inflammatory comments does not constitute molestation or intimidation.  Nor can it constitute fraud, as there is no accompanying allegation that Arnold was aware of the falsity of its statements.  <u>See</u> <u>Weisman v.</u>

---

[3] Toro has not alleged that Arnold made bad comments about him in retaliation for his opposition to discrimination.  Although Toro discusses an alleged retaliatory "campaign" against him, he also alleges that the campaign ended when he was terminated.  <u>See</u> Amended Compl. at ¶ 12.

<u>Kaspar</u>, 233 Conn. 531, 539 (1995) (explaining that a defendant's statement is only fraudulent if the defendant knew that the statement was false at the time he made it). Finally, because Toro has not even alleged that Toro had the means of knowing the truth about the statements made, should have known about the truth of the statements, or had the duty of knowing the truth, Toro has not established that Arnold engaged in negligent misrepresentation.[4]  <u>See</u> <u>Kramer v. Petisi</u>, 285 Conn. 674, 681 (2008) (discussing the elements of a negligent misrepresentation claim).

    C.    <u>Count Five</u>

    In Count Five, Toro brings a claim for intentional infliction of emotional distress. To sustain such a claim, Toro must show that Arnold: (1) either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct; (2) its conduct was extreme and outrageous; (3) its conduct was what caused the plaintiff's distress; and (4) the plaintiff sustained emotional distress that was severe.  <u>Appleton v. Bd. of Educ.</u>, 254 Conn. 205, 210 (2000).

    The court first deals with Toro's claim that Arnold intentionally inflicted emotional distress on him through its untrue comments to prospective employers.  Arnold argues that this part of Toro's claim cannot survive because Toro has not alleged actions that are sufficiently "outrageous."

    To fit the "outrageousness" prong, Toro must point to conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

---

[4] Nor does the court see any basis on which it could plausibly infer that Arnold had the means to find out the truth, should have known the truth, or had a duty to know the truth, because Toro has failed to give any details about the content of the untrue statements.

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton, 254 Conn. at 210-11 (quoting Restatement (Second) of Torts § 46 cmt. d) (internal quotation marks omitted). Toro falls well short of that standard. Indeed, as discussed above, Toro has not even alleged that Arnold was aware of the falsity of its statements, or that Arnold was negligent in not realizing the falsity of its statements. The mere act of giving innocently false information to prospective employers hardly is "outrageous," even if the language used was inflammatory. Cf. Miron, 284 Conn. at 47 (discussing the social value that stems from good faith employment references given by a former employer). Toro's intentional infliction of emotional distress claim is dismissed.

In reading Toro's Complaint, one might also think that Toro intentional infliction of emotional distress claim arises in part from events that took place while he was employed, and from his termination. Arnold argues that this claim fails because Arnold's conduct was not sufficiently outrages, and it further argues that this claim is preempted by the Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31-284(a). Toro does not dispute Arnold's contentions.[5] See Plaintiff's Mem. in Opp. at 4-5 (stating that preemption "might apply" to conduct during Toro's employment and termination, and then failing to defend his claim based on these time periods). The court dismisses Toro's claim because, absent objection from Toro, it concludes that the alleged conduct is not sufficiently outrageous to be actionable.

---

[5] Toro's failure to challenge the defendant's preemption argument is perplexing because the Connecticut Supreme Court has squarely rejected Arnold's analysis. See Perodeau v. City of Hartford, 259 Conn. 729, 744-45 (2002) (explaining that a claim seeking damages for emotional distress is not preempted by the worker's compensation statute because the worker's compensation statute provides no compensation for purely emotional injuries).

**IV.    CONCLUSION**

Arnold's Motion to Dismiss [Doc. No. 12] is **GRANTED** and Counts Three, Four, and Five are dismissed.  This Ruling does not preclude Toro from recovering damages on his remaining claims based on his lack of various job benefits following his termination.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 28th day of August, 2008.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge