**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

PEDRO OTAVO TORO                          :
    Plaintiff,                           :
                                         :        CIVIL ACTION NO:
v.                                        :        07-cv-1356 (JCH)
                                         :
ARNOLD FOODS COMPANY, INC.                :
d/b/a GEORGE WESTON BAKERIES, INC.        :        APRIL 15, 2009
    Defendant.                           :

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 31)**

**I.      INTRODUCTION**

Plaintiff Pedro Otavo Toro brings this action against defendant Arnold Foods Company, Inc., d/b/a George Weston Bakeries, Inc. ("Arnold").[1]  Arnold is a Delaware corporation with a place of business in Greenwich, Connecticut, where it employed Toro in various capacities from October 1987 to his termination in September 2006.

Toro asserts two claims against Arnold: (1) race and/or national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-2(a)(1), ("Title VII") or the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-51 et seq., ("CFEPA"); and (2) retaliation in violation of Title VII or the CFEPA.[2]  Arnold has moved for summary judgment as to both of Toro's claims (Doc. No. 31).  For the reasons stated below, Arnold's Motion is granted.

---

[1] Defendant states that Arnold does not do business as George Weston Bakeries, Inc. ("GWB"), but rather is a subsidiary of GWB.  Arnold claims that GWB was improperly named as a party to this action.  In light of the court's ruling on the defendant's Motion for summary judgment, the point is moot.

[2] Toro originally asserted five counts for relief.  In an August 28, 2008 Ruling, the court dismissed Counts Three, Four, and Five pursuant to Fed. R. Civ. P. 12(b)(6).  See Doc. No. 28.

## II.    STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Generally, when assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000).  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## III.    BACKGROUND[3]

Toro is a Hispanic male of Colombian descent.  See Amended Complaint ("Amd.

---

[3] For the purposes of the instant motion, the court accepts facts undisputed by the parties and supported by evidence as true, and resolves disputed facts in favor of the nonmoving party where there is evidence to support his allegations.

Complaint") at ¶ 6.  For 18 years he worked for Arnold at its Greenwich bakery, first in the wrapping department and then in the shipping department.  See Defendant's Local Rule 56(a)1 Statement ("L.R. 56(a)1 Statement") at ¶¶ 2, 4.[4]  On September 21, 2006, however, Toro was terminated from his employment.  See id. at ¶ 4.

Toro's termination arose out of an incident which occurred on August 26, 2006, in the locker room of Arnold's Greenwich bakery. See id. at ¶ 11.  On August 30, 2006, Toro reported the incident to Jeanne Carrieri, the human resources manager at the Greenwich facility.  See id. at ¶ 12.  Specifically, Toro reported that the incident occurred around 8:30 a.m., as Toro attempted to exit the locker room.  See Declaration of Jeanne Carrieri ("Carrieri Decl.") at ¶ 13.  He claimed that, as he proceeded through the locker room towards the exit, he encountered an African-American co-worker sitting on a bench, blocking his path.  See id.  According to Toro, he said "excuse me" in an attempt to get by, but the other employee responded in an obscene manner and refused to allow Toro to pass.  See id.  Toro reported that he said "excuse me" once

_____

[4] It bears noting that Toro has failed to comply with the requirements of L. R. 56(a).  Under L. R. 56(a), "each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. P. Rule 56(a).  Further, "[t]he affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule 56(a)1 and 2 Statements in conformity with Fed. R. Civ. P. 56(e)." Id.

Toro's L. R. 56(a)2 Statement denies, disputes, or claims an inability to confirm or deny factual assertions in 13 paragraphs of Arnold's L. R. 56(a)1 Statement.  Yet, despite L. R. 56(a)'s explicit instructions, Toro includes citations for his opposition in only three of these 13 paragraphs.  Moreover, the three citations Toro includes all point to Toro's deposition testimony, which he has failed to file with the court.  As a result, the court has no basis to conclude that there exists any evidence which supports Toro's factual allegations.  Consequently, the statements of fact contained in Arnold's L.R. 56(a)1 Statement are deemed admitted where they are supported by the evidence.  See D. Conn. L. Civ. P. Rule 56(a) ("Counsel . . . are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted"); see also, Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir. 1984) (affirming the validity of deeming a statement of facts admitted where the opposing party fails to comply with the applicable local rule).

more, and attempted to squeeze by the other employee.  See id.  However, Toro claimed, the other employee jumped up, made another obscene comment, and brandished a knife.  See id.  Toro identified a co-worker, Rafael Llamas, as a potential witness to the incident.  See id. at ¶ 14.

After learning of the incident from Toro, Carrieri began an investigation.  See id. at ¶ 15.  By checking the August 26, 2006 work schedule, Carrieri identified Howard Stovall as the other employee involved in the altercation in the locker room.  See id. Carrieri spoke with Stovall, who relayed a different account of the incident.  See id.  In addition to recounting his version of the events to Carrieri, Stovall identified three witnesses: Ken Jarvis, Paul Rainford, and Anderson Walker.  See id.

Carrieri proceeded to interview each of the witnesses identified by Toro and Stovall.  See id.  Carrieri determined that Llamas, although present in the locker room at the time of the altercation, did not see or hear the events unfold.  See id. at ¶ 16. Similarly, Carrieri determined that Jarvis did not witness most of the altercation, as he was in another part of the locker room at the time the altercation began.  See id. Rainford and Whitaker, however, corroborated Stovall's version of the events.  See id.

Based on her investigation, Carrieri determined that Toro provoked the altercation by initiating physical contact with Stovall when he pushed pass him.  See id. at ¶ 17.  She further determined that Stovall spoke to Toro about this initial physical contact, and, in response, Toro walked back towards Stovall, again made physical contact, and proceeded to taunt Stovall by saying, in substance: "You got a knife?  You going to cut me?"  See id.  Carrieri also determined that Toro's allegation that Stovall brandished a knife during the altercation was false.  See id.  Rather, Carrieri

determined that, at the time of the incident, Stovall had possession of a box cutter he used in his job as a line operator, but that Stovall's box cutter remained in his helmet throughout the altercation.  See id.

After concluding her investigation, Carrieri spoke with Toro's supervisor, Tom Lazaro, about the information she had gathered.  See id. at ¶ 18.  Carrieri and Lazaro agreed that Toro had acted inappropriately and unprofessionally, and had violated Arnold's anti-violence policies.  See id.  As a result, Carrieri and Lazaro decided that Toro should be suspended, pending termination, for his involvement in the August 26, 2006 altercation.  See id.  Lazaro provided Toro with written notice of his suspension, pending termination, on September 6, 2006.  See id.

Arnold decided not to take any disciplinary action against Stovall for his involvement in the August 26, 2006 incident because Carrieri determined that Stovall had not provoked Toro's behavior, had not engaged in physical misconduct, had not violated Arnold's anti-violence policies, and had not engaged in behavior of similar culpability to that of Toro.  See id. at ¶ 24.

Toro, a member of the Bakery, Confectionary, Tobacco Workers & Grain Miller International Union, Local 69 bargaining unit ("the Union"), grieved the disciplinary actions taken against him.  See L.R. 56(a)1 Statement at ¶¶ 3, 19.  On September 13, 2006, a meeting was held to discuss Toro's suspension and pending termination.  See Carrieri Decl. at ¶ 19.  On September 21, 2006, Arnold converted Toro's suspension into a termination.  See id.  Subsequently, the Union requested a pre-arbitration meeting to review the termination.  See id. at  ¶ 20.  The pre-arbitration meeting was held on October 4, 2006.  See id. at  ¶ 21.  On October 10, 2006, Arnold sustained its

decision to terminate Toro's employment.  See id.

On April 12, 2007, an arbitration hearing was held concerning Toro's suspension and termination.  See id. at  ¶ 22.  Arbitrator Bonnie S. Weinstock denied Toro's grievance, finding that Arnold had cause to suspend and terminate Toro's employment. See id.  On December 27, 2006, Toro filed a dual charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC").  See id.  In the charge, Toro alleged that Arnold discriminated against him and terminated him because of his race and national origin.  See id.  Toro did not check the box on the charge indicating that he was alleging a retaliation claim, nor did he allege that he had engaged in any opposition to discrimination while employed by Arnold.  See id.  Since this initial charge, Toro has not filed any subsequent charges against Arnold with the EEOC.  See id.

Toro now asserts two claims against Arnold.  Count One alleges that Arnold engaged in race and/or national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-2(a)(1), ("Title VII") or the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-51 et seq., ("CFEPA").  Count Two alleges that Arnold retaliated against Toro in violation of Title VII or the CFEPA.  Arnold has moved for summary judgment as to both of Toro's claims.

**IV.    ANALYSIS**

A.    Count One

Toro claims that his employment was terminated because of race and national origin discrimination in violation of Title VII or the CFEPA.  At the summary judgment stage, employment discrimination claims are analyzed using the burden-shifting

framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04

(1973).[5]  Under this framework, Toro has the initial burden of presenting a prima facie

case of discrimination.  <u>See</u> <u>Texas Dep't Of Cmty. Affairs v. Burdine</u>, 450 U.S. 248,

252-53 (1981).  This requires proof that he: (1) is a member of a protected class; (2)

was performing his duties satisfactorily; and (3) was discharged; (4) in circumstances

supporting an inference of discrimination on the basis of his membership in the

protected class.  <u>See</u> <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000).  In

the present case, Arnold admits the first and third elements, but disputes the second

and fourth.  The court begins its analysis by examining the fourth element, the inference

of discrimination.

        In its Memorandum in Support of Summary Judgment, Arnold states that Toro's

discrimination claim is based on "Arnold's decision not to discipline Stovall, [Toro's]

conclusory allegations, and [Toro's] 'general feeling' that Arnold terminated [him] due to

a discriminatory animus."  Memo. in Supp. at 2.  Toro, on the other hand, claims that his

discrimination claim is based on Arnold's conduct with regard to job and duty

assignments, its failure to promote, its failure to investigate violations of company

policies including threats and use of profane language toward Toro by other Arnold

employees, its threats of termination if Toro pursued claims of discrimination and

violations of other policies against other Arnold employees, and finally, its suspension

---

    [5] Connecticut courts follow the analytical framework set forth in <u>McDonnell Douglas</u> when
evaluating a claim for discrimination based on disparate treatment.  <u>See</u>, <u>e.g.</u>, <u>Brittell v. Dept. of Corr.</u>, 247
Conn. 148, 164 (Conn. 1998) ("In defining the contours of an employer's duties under our state
antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII of the
Civil Rights Act of 1964, the federal statutory counterpart to § 46a-60").  As a result, the court analyzes
Toro's Title VII and CFEPA claims together.

and termination of Toro.  Memo. in Opp. at 2-3.

"When the defendant moves for summary judgment on the ground that there is an absence of evidence to support [an inference of discrimination], the plaintiff's burden of producing such evidence in opposition to the motion is de minimis."  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  Despite the de minimis nature of the burden, however, the plaintiff "cannot meet this burden through reliance on unsupported assertions."  Id.  Rather, "once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor."  Id.

Further, a motion for summary judgment "will not be defeated merely . . . on the basis of conjecture or surmise."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991).  Instead, the party opposing summary judgment must "set forth the specific facts in affidavit or other permissible evidentiary form that demonstrate a genuine issue for trial."  Gore v. Colonial Penn Ins. Co., 335 F. Supp. 2d 296, 301-302 (D. Conn. 2004) (citation omitted).  Conclusory statements, mere allegations, denials of the adverse party's pleading, and contentions that the affidavits supporting the motion for summary judgment are not credible, will not suffice.  See Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In the present case, Toro's Memorandum in Opposition to Summary Judgment and his L.R. 56(a)2 Statement cite to documents which, he argues, support his claims (i.e., Toro's deposition testimony and his answers to Arnold's interrogatories).  Toro,

however, has not filed these documents with the court.  In fact, Toro has filed no affidavits, no deposition testimony, and no responses to discovery requests supporting his claims.  Thus, the only facts on which Toro may rely in opposing Arnold's Motion are those facts introduced into the record by Arnold.  Consequently, the only evidence in the record which would support an inference of discrimination is the fact that Arnold terminated Toro but did not discipline Stovall.  Such is barely sufficient to satisfy Toro's de minimis burden of presenting a prima facie case.

Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's termination.  In this case, Arnold claims Toro was terminated for violating Arnold's rules and regulations prohibiting violence in the workplace during the incident of August 26, 2006.  Carrieri Decl. at ¶ 18.  It further claims that no disciplinary action was taken against Stovall because, based on witness testimony and other information gathered, Arnold's Human Resources Manager concluded that Stovall had not provoked Toro's behavior, had not engaged in physical misconduct, had not violated Arnold's anti-violence policies, and had not engaged in behavior of similar culpability to that of Toro. See id. at ¶ 24.  Arnold supports these claims with an affidavit from Jeanne Carrieri, the Human Resources Manager who conducted the investigation of the August 26, 2006 incident.

When an employer proffers a legitimate, non-discriminatory reason for an employees dismissal, the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action.  See McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 804 (1973).  In an attempt to satisfy this burden, Toro argues that Arnold's stated reason for Toro's termination is a pretext for discrimination because Carrieri "tainted the investigation" of the August 26, 2006 incident.  Memo. in Opp. at 7. Specifically, Toro argues that Carrieri "discounted Toro's desire not to make a formal report (so as not to put Stovall's job in jeopardy)" and "ignored and discouraged" evidence that Stovall had admitted to pulling a knife on Toro.  Id.  As noted above, Toro offers no admissible evidence to support these allegations.

As the Second Circuit has repeatedly held, "unsupported allegations do not create a material issue of fact."  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  Because the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists, when facing a motion for summary judgment a nonmoving party cannot simply rest on the allegations in its pleadings.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  This is precisely what Toro has done here.  As a result, the court has no basis to conclude that there is a genuine issue of material fact requiring a trial on Toro's discrimination claim, and therefore Arnold is entitled to summary judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

     B.    <u>Count Two</u>

In Count Two of his Amd. Complaint, Toro claims that Arnold retaliated against him in violation of Title VII or the CFEPA.  Specifically, Toro claims that "[d]uring the

-10-

time of his employment with Arnold, [he] opposed employment discrimination by Arnold

in an open and vocal manner," and that due to this opposition, "Arnold began a

campaign to terminate Toro's employment."  Amd. Complaint at ¶¶ 11-12.

Title VII forbids an employer to retaliate against an employee for, <u>inter alia</u>,

complaining of employment discrimination prohibited by Title VII.  <u>See</u> 42 U.S.C. §

2000e-3(a).  In order to present a prima facie case of retaliation under Title VII, a

plaintiff must adduce evidence sufficient to permit a rational trier of fact to find:

> (1) that he engaged in protected participation or opposition under Title VII;
> (2) that the employer was aware of this activity; (3) that the employer took
> adverse action against the plaintiff; and (4) that a causal connection exists
> between the protected activity and the adverse action, <u>i.e.</u>, that a retaliatory
> motive played a part in the adverse employment action.

<u>Kessler v. Westchester County Dep't of Soc. Servs.</u>, 461 F.3d 199, 205-206 (2d Cir.

2006).

Arnold does not concede that Toro has presented a prima facie case of

retaliation.  In fact, Arnold denies that it retaliated against Toro, and notes that, in

completing his CHRO/EEOO charge, Toro did not allege that he had engaged in any

opposition to discrimination while employed by Arnold.  L.R. 56(a)1 Statement at ¶ 22.

Moreover, as was the case with his discrimination claim, Toro has filed no affidavit,

deposition testimony, answer to a discovery request, or other admissible evidence

which supports his retaliation claim.  As a result, Arnold is entitled to summary judgment

on Toro's retaliation claim for the same reasons it is so entitled on his discrimination

claim: "Rule 56(c) mandates the entry of summary judgment . . . against a party who

fails to make a showing sufficient to establish the existence of an element essential to

that party's case . . . ."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

-11-

**V.      CONCLUSION**

For the reasons stated herein, defendant's Motion for Summary Judgment (Doc.

No. 31) is **GRANTED**.  Judgment shall enter for the defendant, and the Clerk is directed

to close this case.

**SO ORDERED**.

Dated this 15th day of April, 2009, at Bridgeport, Connecticut.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge